UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**LISA R. VAUGHN**                                                                                                          **PLAINTIFF**

**v.**                                                                              **CIVIL ACTION NO. 4:16-CV-P61-JHM**

**DAVIESS COUNTY DETENTION CENTER**                                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

      This is a civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

**I. SUMMARY OF COMPLAINT**

      Plaintiff Lisa R. Vaughn filed this 42 U.S.C. § 1983 action on a Court-approved form. Plaintiff lists the Daviess County Detention Center (DCDC) as a Defendant in the caption of the complaint.

      In her complaint, Plaintiff makes allegations related to overcrowding, cold food, limited access to showers and toilets, restricted visitation, restricted kiosk access, medical fees, denial of recreational opportunities, denial of access to a legal aid or law library, her classification, her placement at DCDC, and the inadequate treatment of her serious health conditions.

      Plaintiff concludes her complaint by stating that she would like to be transferred to "KCIW or WKCC or somewhere I can work, my mental health addressed, and not sleep with mat that is on floor directly." She also seeks $1,350.00 in compensatory damages and $1,350.00 in punitive damages.

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc*. v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v*. *Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its

legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. DCDC and Official-Capacity Claims

The Court first notes that although Plaintiff names DCDC as a Defendant in the caption of the complaint, the detention center is not an entity subject to suit. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The claims against the detention center are against Daviess County as the real party in interest. *Id.* ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."); s*ee also Blay v. Daviess Cty. Det. Ctr.*, No. 4:07CV-P69M, 2007 U.S. Dist. LEXIS 71131, at *1 (W.D. Ky. Sept. 25, 2007); *Fambrough v. Vaught*, No. 4:06CV-P130-M, 2007 U.S. Dist. LEXIS 20679, at *1 (W.D. Ky. Mar. 21, 2007) ("[T]he claims against the detention center are also against [the County] as the real party in interest.").

3

In addition, to the extent that Plaintiff sues DCDC deputies in their official capacities, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, the claims brought against the deputies in their official capacities are also deemed claims against Daviess County. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 U.S. Dist. LEXIS 17770, at *13-14 (W.D. Ky. Feb. 11, 2013).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The municipality is only liable when an official policy or custom of the corporation causes the alleged deprivation of federal rights. The Sixth Circuit has identified four ways a plaintiff may prove the existence of a municipality's illegal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* Thus, to state a claim against Daviess County, Plaintiff must identify official policies, actions of officials with final decision-making authority, a policy of inadequate training or supervision, or a custom or practice of tolerating the violation of federal rights. Where no formal written policy exists, "the critical question is whether there is a particular custom or practice that 'although not

4

authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Jones v. Muskegon Cty.*, 625 F.3d 935, 946 (6th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121(1988)).

It is under this standard that the Court will address Plaintiff's official-capacity claims and claims against Daviess County.

### B. Eighth Amendment Claims

#### 1. Conditions of Confinement

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

##### a. Overcrowding

In her complaint, Plaintiff alleges that, when she arrived at DCDC, she was placed in a dormitory with "13 bunks beds to sleep 26 inmates." She states that, due to this overcrowding, "10-15 inmates had to sleep on the floor" and that she slept on a mat on the floor for several weeks.

"[E]xtreme deprivations must be alleged to support a prison overcrowding claim." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). "[O]vercrowding is not, in itself, a constitutional violation, and [Plaintiff] has not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation." *Id.*; *see also Brown v. Plata*, 563 U.S. 493, 517 (2011) (Overcrowding violates the Eighth Amendment when it "strains inadequate medical and mental health facilities; overburdens limited clinical and custodial staff; and creates violent, unsanitary, and chaotic conditions that contribute to the constitutional violations"); *Daugherty v. Timmerman-Cooper*, No. 2:10-cv-01069, 2011 U.S. Dist. LEXIS 81939, at *3 (S.D. Ohio June 28, 2011) ("[N]umerous courts, including both the Sixth Circuit and this Court, have emphasized that double or triple celling inmates, without more, is insufficient to state a constitutional claim.") (report and recommendation), *adopted by*, 2011 U.S. Dist. LEXIS 81936 (S.D. Ohio July 27, 2011).

Because Plaintiff has not alleged a denial of basic needs or other conditions resulting from jail overcrowding, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### b. Limited Access to Prison Kiosk

Plaintiff also alleges that that there is a kiosk in her dormitory that is used for correspondence, commissary, inmate services, and the filing of grievances, but that guards shut the kiosk off "for up to 8 hours at a time." Inmates, however "[do] not have a constitutional right to obtain access to the prison kiosk at every possible opportunity or manner of [their] choosing." *Brown v. Prelesnik*, No. 1:12-cv-873, 2013 U.S. Dist. LEXIS 30361, at *36 (W.D. Mich. Mar. 6, 2013) (holding that denial of access to the prison kiosk on one or more occasions failed to state an Eighth Amendment claim); *see also Gallup v. Schmaeling*, No. 12-cv-1264, 2013 U.S. Dist.

6

LEXIS 129699, at *6-9 (E.D. Wis. Sept. 10, 2013) (holding that restriction on access to a kiosk which allowed inmates to check their account balances, order items from the commissary, and communicate with their families through email did not implicate a constitutional right); *Beck v. Gaudette*, No. 212-cv-329-FtM-29SPC, 2012 U.S. Dist. LEXIS 104010 (M.D. Fla. Jul. 26, 2012) (finding no constitutional violation where inmate could not access kiosk through which he could order items from the commissary because plaintiff was allowed to access commissary items by alternative means).

Here, Plaintiff alleges only an intermittent denial of access to the kiosk and does not allege that was she entirely denied access to services. Accordingly, the Court will dismiss Plaintiff's claim based upon limited access to a prison kiosk for failure to state a claim.

### c. Ill-fitting Uniforms

Plaintiff also alleges that the uniforms provided to her by DCDC do not fit. The Court can find no case law which suggests that this type of inconvenience rises to the level of a constitutional violation. This is because ill-fitting uniforms do not "offend society's standards of decency nor [does it] demonstrate an unnecessary and wanton infliction of pain." *Williams v. Bradley*, No. 81-5501, 1982 U.S. App. LEXIS 12430, at *3 (6th Cir. Feb. 2, 1982); *see also Goss v. Bd. of Cty. Comm'rs*, 645 F. App'x 785, 792 (10th Cir. Apr. 26, 2016) ("Ill-fitting clothing alone is not sufficiently serious to rise to the level of a constitutional violation."); *Young v. Berks Cty. Prison,* 940 F. Supp. 121 (E.D. Pa. 1991) (finding that plaintiff who was forced to wear dirty, ill-fitting clothing and was subjected to ridicule by other inmates had not suffered a violation of his constitutional rights).

Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### d. Cold Food

Plaintiff also alleges that during the first five to six weeks that she was incarcerated at DCDC, she was only give one hot meal - lunch - and that she was given a "brown bag" breakfast and dinner.

In general, complaints about the preparation or quality of prison food are "far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). And, indeed, most courts seem to agree that there is no constitutional right to be served hot food. *See Laufgas v. Speziale*, 63 F. App'x 192, 198 (3d. Cir. 2008) (holding that there is no constitutional right to hot meals); *Dean v. Campbell*, No. 97-5955, 1998 U.S. App. LEXIS 17782, at *5 (6th Cir. July 30, 1998) (per curiam) (holding that allegation of cold meals failed to show that prisoner "was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim"); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (holding that prisoner's claim that he was denied his Eighth Amendment rights when he was served cold food was frivolous).

Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### e. Limited Number of Working Showers and Toilets

Plaintiff also alleges that the inmates only have access to one working shower and two working toilets.

"[T]he Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets." *Abdur-Reheem-X v. McGinnis*, 198 F.3d 244 (6th Cir. 1999) (citing *Knop v. Johnson,* 977 F.2d 996, 1013 (6th Cir. 1992) (holding that inmate failed to state an Eighth Amendment claim related to toilet access)). *See also Dellis v. Corrections Corp. of*

*America*, 257 F.3d 508, 511-12 (6th Cir. 2001) (no constitutional claim where prison deprived inmate of a lower bunk, subjected him to a flooded cell, and deprived him of a working toilet for an unspecified period of time); *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003) (no constitutional claim where inmate was prevented access to toilet for three hours, causing him to experience an uncomfortably full bladder but not soil himself); *Abdur-Reheem-X,* 198 F.3d 244 (no claim where prison assigned inmate a cell without a toilet, requiring him to wait until guard made the rounds every half-hour and ask permission to be escorted to a toilet, but the evidence showed that he was given the opportunity to go to a toilet when he asked); *Rivers v. Pitcher*, 68 F.3d 475 (6th Cir. 1995) (no claim where inmate was allowed to use the toilet every two hours). *But see Harding v. Balwin*, No. 16-cv-083-SMY, 2016 U.S. Dist. LEXIS 63507 (S.D. Ill. May 13, 2016)(denying bathroom access to an inmate who has no alternative but to urinate on himself, and then making him sit in his urine-soaked clothes for three hours, suggests an Eighth Amendment violation).

Based on the above, the Court finds that because Plaintiff does not claim that the alleged limited number of working showers and toilets at DCDC caused her harm, she has failed to state a claim upon which relief may be granted.

### f. Recreation

Plaintiff also alleges that, although the inmate handbook states that inmates are to "get rec 3x per week," she filed a grievance because, during one month, they were only offered "rec" after midnight and before 5 a.m. She states that, in response to this grievance, she was told "the rec officer only works 2nd shift."

With regard to exercise, the Sixth Circuit has held that "[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological

justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonable good physical and psychological health." *Patterson v. Mintzes*, 717 F.2d. 284, 289 (6th Cir. 1983). The Sixth Circuit has not established a constitutional minimum amount of exercise for prisoners. S*ee Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995).

However, because Plaintiff's alleges that this deprivation of the opportunity for recreation was only temporary and does not allege that it caused her any harm, the Court will dismiss this claim for lack of recreational opportunities for failure to state a claim upon which relief may be granted. *See, e.g.*, *Horn v. Madison Cty.*, 22 F.3d 653, 659 (6th Cir. 1994).

### 2. Medical Fees

Plaintiff also alleges that she is charged $15.00 each time she completes a sick call request form or is seen by a doctor. She further alleges that she is charged $10.00 per month for her medications.

However, the Sixth Circuit has held that "it is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay." *White v. Corr. Med. Servs.*, 94 F. App'x 262, 262 (6th Cir. 2004); *see also Bailey v. Carter*, 15 F. App'x 245, 250 (6th Cir. 2001) (holding that Ohio law requiring fees for inmate medical visits did not violate Eighth or Fourteenth Amendments).

Because Plaintiff has not alleged that she was denied medical care or her medications because of fees, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### 3. Deliberate Indifference to a Serious Medical Need

Plaintiff also claims that DCDC officials were deliberately indifferent to her serious medical needs. To satisfy the objective component of an Eighth Amendment deliberate

indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that she is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836).

In her complaint, Plaintiff alleges that she suffers from high blood pressure and seizures and that she was not placed on medication for these conditions until 10 days after she arrived at DCDC. However, not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 105. Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *Accord v. Brown*, No. 93-2083, 1994 U.S. App. LEXIS 34320, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner. Neither negligent medical care nor delay in medical care constitutes a violation of the Eighth Amendment unless there has been deliberate indifference, which results in substantial harm."); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("Succinctly stated, negligent medical care does not constitute a valid section 1983 claim. Further, delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.").

With regard to Plaintiff's allegation of anxiety and bipolar disorder, the latter of which causes her to have night terrors and hear voices, the Court finds that Plaintiff has described a

serious medical need. *See, e.g., Luna v. Butler*, No. 16-cv-00579-MJR, 2016 U.S. Dist. LEXIS 88668, at *5 (S.D. Ill. Jul. 8, 2016) (finding that allegations of bipolar, anxiety, and post-traumatic stress disorders satisfy the objective component of a deliberate indifference claim for screening purposes); *Graham v. Warden*, No. 07-cv-295-PB, 2007 U.S. Dist. LEXIS 98964, at *7 (D.C. N.H. Dec. 13, 2007) (finding that mental health conditions including ADHD, bipolar disorder, personality disorder, and anxiety constitute a serious medical need).

Plaintiff alleges that she had been taking Zyrpexa and Lithium for her mental health conditions since 2012, and that when she arrived at DCDC on February 22, 2016, she did receive any medication for her mental health conditions for 10 days. She states was she was then placed on Lithium for 10 days. After that period elapsed, Plaintiff began having severe anxiety and night terrors and began hearing voices. Plaintiff alleges that she was then placed on Risperdol but that this medication does not work for her. She further alleges that, as of the date she filed this complaint, May 23, 2016, she has not seen a mental health professional since she arrived at DCDC.

Based on these allegations, the Court does not see a constitutional claim. While Plaintiff states that she has not seen a mental health provider, it is evident that she has been seen by a medical provider and that her medications were prescribed by a doctor or nurse practitioner. Where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, a difference of opinion between medical care providers as to appropriate treatment for an inmate's ailment does not present a constitutional controversy. *Estelle*, 429 U.S. at 105-06; *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (finding that a disagreement between prison physician and physician who originally prescribed medications is not of constitutional

magnitude); *Martin v. Staubus*, No. 2:14-cv-200-TWP-DHI, 2015 U.S. Dist. LEXIS 8273 (E.D. Tenn. Jan. 26, 2015) (finding no constitutional claim where prison doctor refused to treat plaintiff with medication he had been prescribed by a psychiatrist).

Finally, Plaintiff also alleges that that she was bitten on the leg by a spider and that, even though she was put on an antibiotic, her leg became severely swollen. However, she also states that after 11 days she was seen by a doctor who put her on another antibiotic. Thus, even if the Court were to assume that Plaintiff's spider bite constituted a serious medical need, Plaintiff cannot establish deliberate indifference because she alleges that she was twice seen and treated for the spider bite within a span of eleven days. *See Westlake v. Lucas*, 537 F.2d at 860 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")

For the foregoing reasons, the Court will dismiss Plaintiff's claim for deliberate indifference to a serious medical need.

### C. Fourteenth Amendment Claims

#### 1. Classification and Placement

Plaintiff also claims that her constitutional rights have been violated because, as of the time of the filing of her complaint, she had not been "classified." She states that because she is not "classified," she is not allowed to work, receive work credit, or take the only class offered at DCDC. Plaintiff also objects to her placement at DCDC and asks to be transferred to another facility.

It is well-established that prisoners do not have a constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*,

461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215 (1976). Courts have also regularly held that prisoners enjoy no constitutional right to vocational training or rehabilitative programs, *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981), or prison jobs. *Carter v. Tucker,* 69 F. App'x 678, 680 (6th Cir. 2003); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). *See also Canterino v. Wilson,* 869 F.2d 948, 952-54 (6th Cir. 1989) (no liberty interest in inmate classification or eligibility for work programs).

Based on the above, it is clear that Plaintiff has no constitutional right to placement in a particular institution or to a security classification that permits her to work. Absent allegations that her lack of classification imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life," the Court finds plaintiff has failed to state a claim upon which relief may be granted for due process violations.

### 2. Visitation

Plaintiff also alleges that she is only allowed "15 min visit through the glass" with her family, even though they live over two hours away, and that the men housed in the same facility are "entitled to 1 hour contact."

In general, inmates do not have a clearly established constitutional right to receive visits, in particular contact visits. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010); *Maxwell v. Fed.Corr. Inst.*, 42 F. App'x 824 (6th Cir. 2002) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Bellamy v. Bradley,* 729 F.2d 416, 420 (6th Cir. 1984)). *Toussaint v. McCarthy*, 801 F.2d 1080, 1114 (9th Cir. 1986 ) ("To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society"). The Supreme Court has upheld a

variety of restrictions on visitation against First, Eighth, and Fourteenth Amendment challenges. *Overton*, 539 U.S. at 133.

Here, however, the Court also construes Plaintiff's allegations as a claim under the Equal Protection Clause of the Fourteenth Amendment because she states that male inmates are allowed longer visitation periods than female inmates. *See Lothes v. Butler Cnty. Juvenile Rehab. Ctr.*, 243 F. App'x 950, 956 (6th Cir. 2007) (noting that the Equal Protection Clause ensures that female inmates are afforded opportunities comparable to those of similarly-situated male inmates); *Sullivan v. City of Cleveland Heights*, 869 F.2d 961, 963 (6th Cir. 1989) (a female inmate must establish that she was accorded treatment unequal to that of her male counterparts to proceed with an with an equal-protection claim); *Holt v. Maury County Jail*, 2013 U.S. Dist. LEXIS 135089 (M.D. Tenn. Sept. 20, 2013) (allowing equal protection claim to proceed against deputy in his official capacity because plaintiff alleged that female inmates are not provided access to the law library.)

Thus, the Court will allow Plaintiff's equal protection claim against Daviess County to proceed at this time. In addition, although Plaintiff does not identify or name as Defendants the DCDC officials who were alleged involved in this alleged violation of her rights, the Court will allow Plaintiff to amend her complaint to do so. *See LaFountain v. Harry,* 716 F.3d 944 (6th Cir. 2013) (a district court may allow a prisoner to amend a complaint to avoid *sua sponte* dismissal under the Prison Litigation Reform Act).

### D. First Amendment Claims

In her complaint, Plaintiff also seems to allege that DCDC has no legal aids or law library. The Court observes that the right of access to the courts does not entail a constitutional right to a law library or professional legal assistance. *Lewis v. Casey,* 518 U.S. 343, 350

15

(1996). Instead, "meaningful access to the courts is the touchstone," *Bounds v. Smith,* 430 U.S. 817, 823 (1977). To assert a violation of the constitutional right to adequate, effective, and meaningful access to the courts, a prisoner must allege facts indicating a denial of legal resources and that the denial of such resources hindered a prisoner's efforts to pursue a non-frivolous claim. *Lewis,* 518 U.S. at 350.

Here, Plaintiff has not raised a constitutional claim because she neither claims nor makes a showing that she has been hindered in her effort to pursue a non-frivolous legal claim. *See Hadix v. Johnson,* 182 F. 3d 400, 404 (6th Cir. 1999) ("An inmate must demonstrate an 'actual injury,' which, the Court said, cannot be shown 'simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense.'") (quoting *Lewis v. Casey,* 518 U.S. at 351 (1996)).

Because Plaintiff has not demonstrated any prejudice to this litigation, *see Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996), or to any other non-frivolous claim, she has failed to state a claim upon which relief may be granted. Therefore, the Court will dismiss this claim.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Eighth Amendment claims based upon her conditions of confinement, medical fees, and deliberate indifference to a serious medical need; her Fourteenth Amendment claims based upon a delay in classification and placement at DCDC; and her First Amendment claims based upon the lack of a law library and legal aid are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED that within 30 days from the entry date of this Order, Plaintiff may file an amended complaint to name as Defendants the DCDC officials who**

were allegedly involved in the denial of Plaintiff's equal protection rights under the visitation policy, to sue these officials in their individual capacities, and to describe how each of these individuals was involved in the violation of her rights with regard to this policy.

The Clerk of Court is DIRECTED to send Plaintiff a 42 U.S.C. § 1983 form, with the word "Amended" and this case number written in the caption.

The Court will conduct an initial review of Plaintiff's amended complaint pursuant to § 1915A. **Should Plaintiff fail to file an amended complaint with the above information within the allotted amount of time,** the Court will enter a Scheduling Order and direct service upon Daviess County in connection with Plaintiff equal protection claim.

Date:   October 3, 2016

cc: Plaintiff, *pro se*
    Defendants
4414.011

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

17